UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

SHERRY CALHOUN,

                Plaintiffs,

-vs-

DAVID SCHALDACH, In his Individual
Capacity; CHARLES AMUNDSON, In
his Individual and Official Capacity; and
JOHN CRAM, In his Individual and
Official Capacity.

                Defendants.

**AMENDED COMPLAINT**

Case No.:  08 CV 194

## I.  NATURE OF PROCEEDINGS

101.   This is a civil action commenced under Title 42 of the United States Code, secs. 1983 and 1985 and other applicable provisions of the laws of the United States and the State of Wisconsin brought to redress the violation of Plaintiff Sherry Calhoun's rights guaranteed by the United States Constitution, which proximately caused Sherry Calhoun extreme emotional stress, pain, suffering, and bodily injury.  The actions of the defendants displayed deliberate indifference to Plaintiff's constitutionally protected right to Equal Protection of Law; To Bodily Integrity; and to be free from Cruel and Unusual Punishment, guaranteed by the Fifth, Eighth and Fourteenth Amendment of the United States Constitution.

## II. JURISDICTION AND VENUE

201.   Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. 1331.

202.   Venue is properly laid in the Western District of Wisconsin because the wrongful acts complained of herein took place within the County of Monroe, within the Western District of Wisconsin.

### III. PARTIES

301. The Plaintiff, Sherry Calhoun (hereinafter "Plaintiff") is an adult female resident of the United States and at all times relevant resided in Monroe County, Wisconsin and is currently a resident of La Crosse County, Wisconsin.

302. The Defendant David Schaldach is an adult male citizen of the United States, currently a resident of Monroe County, Wisconsin and was at all times material hereto employed as jail lieutenant for the Monroe County Sheriff's Department.

303. The Defendant Charles Amundson is an adult male citizen of the United States, currently a resident of Monroe County and, at all times material hereto, was Sheriff of Monroe County.

304. The Defendant John Cram is an adult male citizen of the United States, currently a resident of Monroe County and, at all times material hereto, was Undersheriff of Monroe County.

### IV. ALLEGATIONS OF FACT

#### Plaintiff's illness

401. Between the dates of March 19, 2001 and October 29, 2002 Plaintiff was incarcerated in the Monroe County jail in Sparta, Wisconsin with the exception of the times she was transferred for a psychiatric assessments.

402. The Monroe County Circuit Court ordered a psychiatric examination of Plaintiff in the Monroe County Jail by David Van Dyke, M.D. on April 13, 2001 during which he concluded she suffered from a significant mental illness.

403. The Monroe County Circuit Court ordered a psychiatric evaluation of Plaintiff performed by Dr. Robert Most on July 16, 2001 and he concluded she suffered from a severe mental illness.

404. On August 14, 2001 the Monroe County Circuit Court ordered an inpatient evaluation of Plaintiff at the Winnebago Mental Health Institute.

405. On September 25, 2001 the Monroe County Circuit Court suspended the pending proceedings against Plaintiff and ordered her to be treated at Winnebago Mental Health Institute until her competency was restored.

406. On March 6, 2002 Dr. Ather Siddiqui advised the Monroe County Circuit Court that Plaintiff had regained competence but that she suffered from chronic mental illness and a borderline intellectual range.

407. On or about April 3, 2002 Plaintiff was returned from Winnebago Mental Health Institute to the Monroe County Jail.

408. Between April 3, 2002 and August 30, 2002 Plaintiff was incarcerated in the Monroe County Jail as a pre-trial detainee.

409. On August 30, 2002 Plaintiff entered pleas in the Monroe County Circuit Court to the criminal charges pending against her and as a result ceased being a pre-trial detainee.

410. During the course of Plaintiff's incarceration in the Monroe County Jail she was under psychiatric care requiring psychotherapy outside of the jail and was transported by jail staff.

411. During the course of Plaintiff's incarceration in the Monroe County jail the Plaintiff required psychotropic medication which was distributed to her daily by jail staff

412. In a predisposition report filed in the Monroe County Circuit Court on October

22, 2002 Plaintiff's Forensic Case Manager informed the court that in April 2002 when Plaintiff had been returned to the Monroe County Jail her psychiatric symptoms were in remission.

413. In the same predisposition report Plaintiff's Forensic Case Manager informed the court that as of May 2002 Plaintiff's symptoms had greatly increased as a result of her confinement and included Post Traumatic Stress.

414. In the same predisposition report Plaintiff's Forensic Case Manager informed the Court that by October 2002 Plaintiff was experiencing violent nightmares, both auditory and visual hallucinations and would cry a great deal when discussing her time in the jail.

415. On October 24, 2002 Plaintiff was found not guilty by reason of mental disease or defect in Monroe County Circuit Court and was sent to the Winnebago Mental Health Institute for 7 years and 6 months.

416. On October 28, 2002 Plaintiff ceased being an inmate in the Monroe County Jail and she was transported to the Winnebago Mental Health Institute where she remained until April 4, 2004 based on the circuit court finding that release in the community was not appropriate given her current mental state at that time.

417. During the entire course of Plaintiff's incarceration in the Monroe County she was classified, under the Wisconsin Department of Justice Jail Standards, for supervision purposes as a "special needs" inmate based on her serious mental disorder.

418. The Monroe County Sheriffs Department and Jail in 2002 maintained and relied upon The Wisconsin Department of Justice guidelines for the care and supervision of special inmates as the standard of care for jail staff for special needs inmates that all staff had the duty to protect inmates such as Plaintiff from being hurt, harassed or exploited.

419. The Wisconsin Department of Justice Guidelines for special needs inmates

provides that those who purposely fail to intervene in a situation where the safety and security of an inmate with a mental health problem is at risk are deliberately indifferent to that inmate's constitutional right.

### David Schaldach

420.  Defendant David Schaldach was never certified by the State of Wisconsin for employment as a jailer.

421.  Despite not being certified as a jailer during the years 2001 and 2002 Defendant Schaldach was assigned by Defendant Amundson to act as the first line supervisor in charge of the third shift in the Monroe County Jail.

422.  Throughout the Plaintiff's incarceration in 2001 and 2002 Defendant Schaldach was aware that Plaintiff suffered from serious mental illness, was under continuous psychiatric care and required psychotropic medications.

423.  Throughout the years 2001 and 2002 Defendant Schaldach as a first line jail shift supervisor was directly responsible for implementing the conditions of confinement of Plaintiff during third shift.

424.  Throughout the term of Plaintiff's incarceration in Monroe County in 2001 and 2002 Defendant Schaldach did, as a condition of Plaintiff's confinement, repeatedly remove Plaintiff from the general jail population into a conference room where he had her perform oral sex on him in exchange for food, drink and phone privileges.

425.  Throughout Plaintiff's incarceration in Monroe County in 2001 and 2002 Defendant Schaldach did, as a condition of Plaintiff's confinement, repeatedly removed Plaintiff from the general population and placed her in a conference room where he engaged in inappropriate touching of the Plaintiff.

426.     Defendant Schaldach stated in an interview with Investigator Kurt Pappenfuss of the La Crosse County Sheriffs department on August 10, 2006 that his sexual contact with Plaintiff began shortly after she became an inmate in the Monroe County jail and ended when he decided to end it.

427.     Defendant Schaldach stated in his interview with Investigator Pappenfuss on August 10, 2006 that Plaintiff was a troubled and difficult inmate and that his sexual contact with her occurred during counseling sessions commenced in order to calm her down.

428.     Defendant Schaldach's counseling sessions implemented conditions of confinement for Plaintiff that exacerbated her illness and impeded her ability to attend to her legal matters causing her an extraordinarily prolonged pre-trial incarceration and in-patient treatment at the Winnebago Mental Health Institute.

429.     Defendant Schaldach did throughout her incarceration in 2001 and 2002 warn Plaintiff not to tell her treating therapists or anyone else about his sexual contact with her and that if she did she would be in jeopardy because he would see her again.

430.     In a deposition taken on July 25, 2006 in a civil rights action commenced by inmate Brenda Mombourquette Defendant Schaldach admitted that during 2002 he had on multiple occasions placed the Plaintiff in a conference room and had her perform oral sex on him.

431.     In his deposition taken on July 25, 2006 Defendant Schaldach falsely testified that he was never told by Defendants Amundson or Cram that they had been made aware he was having sexual contact in the jail with Plaintiff.

432.     In his deposition taken on July 25, 2006 Defendant Schaldach testified falsely that Defendants Amundson and Cram did not agree to conceal his misconduct.

433. On or about November 13, 2002, jailer Sue Wieman told Defendant Schaldach that inmate Brenda Mombourquette had told her of Schaldach's sexual contact with Plaintiff during a transport to a psychiatric facility.

434. On November 18, 2002 Defendant Schaldach was the senior ranking officer in the jail on the night shift.

435. On November 18, 2002 Brenda Mombourquette was returned to the jail from a psychiatric facility after two suicide attempts and was identified on the jail log as being suicidal.

436. Defendant Schaldach did, between November 18, 2002 and November 22, 2002, deliberately withhold all suicide protections from Brenda Mombourquette for the purpose of allowing her to attempt to commit suicide.

437. On November 22, 2002 Brenda Mombourquette attempted suicide by hanging in the Monroe County jail causing permanent and severe brain damage and permanent memory loss that have prevented her from speaking further about the conditions of Plaintiff's confinement in the Monroe County Jail.

## Charles Amundson

438. During the afternoon of September 26, 2002 Defendant Amundson was notified by Monroe County jail nurse Jeanne Reinart that inmate Brenda Mombourquette had that day complained to her that Defendant Schaldach was taking Plaintiff out of her cell at night and placing her in a conference room where he was having her perform oral sex on him.

439. At that time on September 26, 2002 Nurse Reinart offered to write a report for Defendant Amundson in order to document Brenda Mombourquette's complaint regarding Defendant Schaldach but Defendant Amundson instructed her not to put it in writing.

440. On September 26, 2002 Defendant Amundson told Nurse Reinart that he would

investigate this complaint.

441. On September 26, 2002 at 2:50 p.m. Defendant Amundson received a phone call from jail staff informing him that Plaintiff had been taken from the jail to an appointment with a psychotherapist in Tomah, Wisconsin and her therapist believed she needed to be hospitalized at that time because she was so upset.

442. On September 26 2002, after learning of Plaintiff's emotional state, Defendant Amundson instructed jail staff that Plaintiff was not to be hospitalized and was to be returned to the Monroe County jail.

443. Shortly after September 26, 2002 Defendant Amundson was again advised of inmate Brenda Mombourquette's complaint regarding Defendant Schaldach's sexual contacts with Plaintiff by Jail Administrator Mark Pressler who demanded Amundson take action by immediately suspending Schaldach and investigating the sexual contact.

444. On or about November 13, 2002 Defendant Amundson was informed by jail nurse, Candace Warner, that Brenda Mombourquette had that day informed her that Defendant Schaldach had been having sexual contact with Plaintiff and that she had asked if nurse Reinart had told Defendant Amundson this complaint.

445. After speaking with Brenda Mombourquette, On November 13, 2002, Nurse Warner placed a note under Defendant Amundson's office door advising him that she needed to speak to him.

446. On November 15, 2002 Candace Warner spoke to Defendant Amundson and told him of Defendant Schaldach's past sexual contact with Plaintiff and his recent sexual advances toward Brenda Mombourquette.

447. On November 15, 2002 Nurse Warner advised Defendant Amundson she was

8

concerned that Defendant Schaldach's actions had contributed to Plaintiff's disturbed behavior and that it would come out in her therapy at Winnebago Mental Health Institute.

448.   On November 15, 2002 Defendant Amundson told Nurse Warner that Defendant Schaldach's actions would be investigated.

449.   On November 15, 2002 Nurse Warner made a written entry in her journal documenting the information Brenda Mombourquette had provided her about Defendant Schaldach and the fact that she had informed Defendant Amundson of it and then placed the journal into a safe where she kept it until her deposition in Brenda Mombourquette's civil rights claim taken on July 12, 2006

450.   Defendant Amundson after receiving the reports of Schaldach's sexual contact with Plaintiff from Pressler, Reinart and Warner, advised each that he would take steps to investigate the matter.

451.   Defendant Amundson admitted in an interview with Investigator Kurt Papenfuss of the La Crosse Sheriff's department on July 11, 2006 that he did recall complaints of sexual misconduct on Schaldach's part during 2002 and that he had passed the investigation on to Defendant Cram to handle.

452.   Defendant Amundson admitted in a deposition on August 21, 2006 that he took no steps in 2002 or thereafter to investigate the sexual contact of Plaintiff by Schaldach.

453.   Defendant Amundson has testified under oath on August 21, 2006 that he took no steps after September 26, 2002 to protect Plaintiff from Schaldach.

454.   Defendant Amundson falsely testified under oath on August 21, 2006 that he did not remember ever being informed about Schaldach's sexual contact with Plaintiff during 2002 by anyone.

455.   Defendant Amundson has admitted under oath on August 26, 2006 that if he was told of Schaldach's sexual misconduct with Plaintiff in 2002, he was required to commence an investigation.

456.   Defendant Amundson testified under oath on August 21, 2006 that only he or Defendant Cram had the authority to commence an investigation into the sexual misconduct of Schaldach in 2002.

457.   Monroe County Jail Administrator Mark Pressler submitted his letter of resignation to Defendant Amundson and Defendant Cram on January 29, 2004 stating his belief that the fact that Defendant Amundson had failed to conduct any investigation of Schaldach's actions toward Plaintiff had contributed to Brenda Mombourquette's suicide attempt.

458.   Defendant Amundson, in order to conceal his awareness of Schaldach's unconstitutional misconduct toward Plaintiff, abused the discovery process in Brenda Mombourquette's case by withholding documents establishing his awareness of that misconduct.

459.   Throughout 2001 and 2002 Defendant Amundson condoned and ratified sexual contact between jail staff and inmates by refusing to investigate and discipline jailers who engaged in sexual misconduct in the jail when requested by Jail Administrator Pressler.

460.   Despite the awareness of Plaintiff's serious medical condition between September 26, 2002 and October 29, 2002 Defendant Amundson failed to prevent Defendant Schaldach from continuing to act as the first line supervisor on the night shift responsible for implementing the conditions of her confinement.

### John Cram

461.   On or about September 26, 2002 Defendant Cram, as undersheriff of Monroe County was made aware of the complaints against Defendant Schaldach for his sexual contact

with Plaintiff in the jail.

462. After September 26, 2002, Defendant Cram failed to take any steps to investigate Schaldach's violations of Plaintiff's constitutional rights and protect the Plaintiff from him.

463. In an interview on July 11, 2002 Defendant Amundson told La Crosse County Sheriff Investigator Kurt Pappenfuss that he recalled complaints of sexual misconduct by Defendant Schaldach and that he passed the investigation on to Chief Deputy Cram and he believed that Cram determined the complaints were unfounded.

464. In a deposition on August 21, 2006 Defendant Cram falsely testified that he was never made aware of Schaldach's violation of Plaintiff's constitutional rights.

465. Throughout 2001 and 2002 Defendant Cram condoned sexual contact between jail staff and inmates by refusing to investigate and discipline other jailers who engaged in sexual misconduct in the jail as requested by Jail Administrator Pressler.

466. Despite the awareness of Plaintiff's serious medical condition between September 26, 2002 and October 29, 2002 Defendant Cram failed to prevent Defendant Schaldach from continuing to act as a first line supervisor on the night shift responsible for implementing the conditions of her confinement.

## Conspiracy

467. Defendant Amundson and Defendant Cram did, after receiving the complaints of Defendant Schaldach's unconstitutional actions toward Plaintiff on September 26, 2002, conspire together with Schaldach to conceal Defendant Schaldach's actions toward Plaintiff and allowed Schaldach to continue as a first line supervisor and to implement unconstitutional conditions of her confinement.

468. Defendant Amundson and Defendant Cram, from September 26,2002 to the

present, continue to conspire to conceal their awareness of Schaldach's actions toward Plaintiff by denying ever being made aware of Defendant Schaldach's violations of Plaintiff's constitutional rights by Nurse Reinart, Nurse Warner or Jail administrator Pressler.

469. Between November 18, 2002 and November 22, 2002, Defendant Schaldach in furtherance of the conspiracy with Defendants Amundson and Cram did deliberately withhold from Brenda Mombourquette any and all suicide precautions despite her having been identified to him as suicidal for the purpose of allowing her to attempt suicide

470. Defendant Amundson in furtherance of the conspiracy to conceal Schaldach's unconstitutional acts and in order to conceal his knowledge of violations of Plaintiff's constitutional rights abused the discovery process in Brenda Mombourquette's Federal Civil Rights claim by withholding Lt. Pressler's letter of resignation and falsely representing another document to constitute his resignation.

471. Defendant Cram between September 26, 2002 and the present, conspired with Defendants Schaldach and Amundson, to conceal their violations of Plaintiff's constitutional rights in order to protect one another and impede the due course of justice by testifying falsely in their depositions in Brenda Mombourquette's civil rights lawsuit.

## V. VIOLATIONS OF LAW

501. Plaintiff re-alleges and incorporates the information contained in paragraphs 1-468 herein against all defendants.

### Schaldach

502. The actions of Defendant Schaldach, in his individual capacity, displayed deliberate indifference to Plaintiff's substantive due process liberty right to bodily integrity in

violation of the 5th and 14th Amendments of the United States Constitution.

503. The actions of Defendant Schaldach, in his individual capacity, violated Plaintiff's constitutional right guaranteed by the 8th and 14th Amendments of the United States Constitution when he implemented conditions to her confinement that constituted cruel and unusual punishment and created unreasonable risk to her then present and future mental health and safety.

504. The actions of Defendant Schaldach violated the Plaintiff's constitutional right to equal protection of law guaranteed by the 8th and 14th Amendments to the United States Constitution by withholding the protection of law from her and treating her differently than others similarly situated.

505. Defendant Schaldach, together with Defendant Amundson and Defendant Cram from September 26, 2002 to the present did conspire to conceal his unconstitutional actions and Defendants Amundson and Cram's attempts to conceal them in order to impede the due course of justice and deny Plaintiff the equal protection of law guaranteed by the 14th amendment of the United States Constitution.

### Amundson

506. The actions of Defendant Amundson, in his official capacity ratifying the unconstitutional acts of Defendant Schaldach, displayed deliberate indifference to the Plaintiff's constitutional right not to be deprived of her liberty interest to bodily integrity absent the Substantive Due Process of law guaranteed her by the 8th and 14th Amendments of the United States Constitution when he ratified Defendant Schaldach's unconstitutional actions.

507. The actions of Defendant Amundson in his individual capacity as Schaldach's supervisor, did deprive the Plaintiff of the constitutional right guaranteed by the 8th and 14th

Amendment of the United States Constitution by failing to protect Plaintiff from conditions of confinement of which he was aware and which created an unreasonable risk to her mental health and safety constituting cruel and unusual punishment.

508. The actions of Defendant Amundson in his individual capacity as a supervisor failing to protect Plaintiff from Defendant Schaldach violated the Plaintiff's constitutional right to the equal protection of law guaranteed by the 14th amendment of the United States Constitution when he withheld the protection of law from her treating her differently than others similarly situated.

509. Defendant Amundson, together with Defendants Schaldach and Cram, from September 26, 2002 to the present, did conspire to conceal Schaldach's unconstitutional actions toward Plaintiff and his own failure to protect Plaintiff in order to impede the due course of justice and deny her the equal protection of law guaranteed by the 14th amendment of the United States Constitution.

### Cram

510. The actions of Defendant Cram, in his official capacity ratifying the unconstitutional acts of Defendant Schaldach, displayed deliberate indifference to Plaintiff's constitutional right not to be deprived of her liberty interest to bodily integrity absent the substantive Due Process of law guaranteed by the 8th and 14th Amendments of the United States Constitution when he ratified Defendant Schaldach's unconstitutional acts.

511. The actions of Defendant Cram, in his individual capacity as a supervisor, displayed deliberate indifference to the conditions of Plaintiff's confinement which constituted cruel and unusual punishment in violation of the 8th and 14th Amendments of the United States constitution when he failed to protect the Plaintiff from the known unreasonable risk of harm to

her mental health and safety.

512. The actions of Defendant Cram, in his individual capacity as a supervisor failing to protect Plaintiff from Defendant Schaldach, denied Plaintiff the equal protection of law guaranteed by 14th Amendment of the United States Constitution when he withheld the protection of law from Plaintiff, treating her differently than others similarly situated.

513. Defendant Cram together with Defendants Schaldach and Amundson did, from September 26, 2002 to the present, conspire to conceal Defendant Schaldach's unconstitutional actions toward Plaintiff and their failure to protect Plaintiff in order to impede the due course of justice and deny Plaintiff the equal protection of law guaranteed by the 14th amendment of the United States Constitution.

## VI.   DAMAGES

601. As a direct result of the unlawful acts of the defendants, Plaintiff has suffered and continues to suffer serious emotional distress, pain and suffering, permanent bodily injury, loss of the enjoyment of life and loss of the society and companionship with her minor children and is entitled to money damages in an amount to be determined in excess of   $2,000,000.00

## VII.   CONDITION PRECEDENT

701. All conditions precedent to this lawsuit within the meaning of Rule 9C of the Federal Rules of Civil Procedure have been performed or have otherwise occurred.

## IX.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment awarding the Plaintiff compensatory

damages in the amount determined just by the court, awarding the Plaintiff punitive damages in an amount determined just by the court against the individually named defendants, awarding the Plaintiff the reasonable costs and expenses of this action including a reasonable attorney's fee and her out-of-pocket expenses and granting the Plaintiff such other and further relief as may be just.

## X. DEMAND FOR JURY TRIAL

The Plaintiff demands trial by jury of all issues triable of right to a jury in this action.

Dated this 8th day of May, 2008.

**DEVANIE, BELZER & SCHROEDER, S.C.**

BY: /s/ Michael J. Devanie
_____
Michael J. Devanie
State Bar No. 1005777
Attorney for Plaintiff
300 North 2nd Street, Suite 200
La Crosse, WI  54601
(608) 784-8055